UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 06-61256-CIV-COHN/SNOW

TRIPLE R PAVING, INC.,

      Plaintiff,

v.

LIBERTY MUTUAL INSURANCE CO.,

      Defendant.

_____/

## ORDER DENYING CROSS-MOTIONS FOR SUMMARY JUDGMENT AND STAYING CASE

**THIS CAUSE** is before the Court upon Defendant Liberty Mutual's Motion for Final Summary Judgment [DE 13]. The Court has considered Defendant's Motion, Plaintiff's Cross Motion for Summary Judgment [DE 18] and Memorandum of Law [DE 20], Defendant's Reply in support of its own Motion and Response to Plaintiff's Motion [DE 28], Plaintiff's Reply in support of its Motion [DE 29], all accompanying exhibits, and is otherwise fully advised in the premises.

**I.**    **BACKGROUND**

The underlying facts in this case are undisputed. This declaratory judgment action arises out of a dispute over insurance coverage related to an action currently pending in state court brought by Lester Matthews. Mr. Matthews was injured in an accident that occurred on October 29, 2000 on State Road 7 in Broward County, Florida. According to the complaint in that action, Matthews was injured when his motorcycle hit uneven pavement, purportedly a result of road construction performed by Triple R. Paving, Inc. and its subcontractor, General Asphalt Co. (Matthews Complaint,

Exh. 2 to Defendant's Motion for Summary Judgment [DE 13-5].) Triple R was performing the road construction pursuant to a contract with the Florida Department of Transportation. (Subcontract, Exh. 1 to Defendant's Motion for Summary Judgment [DE 13-2].) In his Complaint, Matthews alleges that FDOT, Triple R and General Asphalt were negligent in the construction of the road because they (1) created and maintained a dangerous condition of an uneven and irregular segment of road, (2) allowed it to exist under circumstances where they knew or should have known of the dangerous nature of the condition, and (3) failed to warn any potential users of the roadway of the dangerous condition. (Matthews Complaint.)

At the time of the accident, Triple R was covered under an insurance policy issued to it by American Home Assurance Company. (See American Home Insurance Policy, Exh. 6 to Defendant's Motion for Summary Judgment [DE 13-14].) The subcontractor, General Asphalt, was covered under a policy issued to it by Liberty Mutual Insurance Co (See Liberty Mutual Insurance Policy, Exh 3A to Defendant's Motion for Summary Judgment [DE 13-6].). Both policies obligated the insurers to provide a defense to their respective insureds to any lawsuit seeking damages for bodily injury to which the policies apply. Triple R's commercial general liability policy with American Home provided, in part, as follows:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply . . .

(American Home Policy.) General Asphalt's commercial general liability policy with

Liberty Mutual contained identical language, providing, in part, as follows:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply . . .

(Liberty Mutual Policy.) Thus far, American Home has provided Triple R with a defense against the claims by Matthews, and Triple R has not expended any monies for this defense. (Deposition of Patricia Fuccile, Exh. 4 to Defendant's Motion for Summary Judgment, p. 31 [DE 13-12]; Deposition of Fredric Pinaro, Exh. 5 to Defendant's Motion for Summary Judgment, p. 15 [DE 13-13].)

General Asphalt's Liberty Mutual policy also contained an endorsement amending the policy definition of an "insured" to include other parties so designated, "but only with respect to liability arising out of your [General Asphalt's] operations or premises owned by or rented to you." (Liberty Mutual Policy.) Additional insureds were to be provided "as per certificates on file with the company," and a certificate was issued providing that Triple R Paving would be an additional insured for the repaving project. (Id.)

The contract between Triple R and its subcontractor, General Asphalt, contained a contractual indemnity provision, providing as follows:

> Subcontractor shall fully indemnify and save harmless Contractor of and from any and all claims, demands and causes of action of every nature, which might be made or asserted against Contractor, by reason of or in any manner pertaining to Subcontractor's performance of the work herein contracted or any failure of Subcontractor to comply with the terms of this agreement, including attorney's fees and any other expenses incurred by contractor in the defense of any such claim, demand or cause of action.

(Subcontract, ¶ 20.)

In the instant action, Plaintiff Triple R seeks a declaratory judgment from this Court setting out the obligations of Liberty Mutual to provide a defense to Triple R and to indemnify Triple R against any damages awarded in the state court action.

## II.   ANALYSIS

Cases arising under the Declaratory Judgment Act present unique jurisdictional questions.  The Act provides that a court "may declare the rights and other legal relations of any interested party seeking such declaration."  28 U.S.C. § 2201(a).  "In all cases arising under the Declaratory Judgment Act, the threshold question is whether a justiciable controversy exists."  Atlanta Gas Light Co. v. Aetna Casualty and Surety Co., 68 F.3d 409, 414 (11th Cir. 1995).  The Court must consider whether the facts alleged demonstrate the existence of a substantial controversy, between parties with adverse interests, with sufficient immediacy and reality to warrant the issuance of a declaratory judgment.  Id.  However, the simple fact that a case satisfies this threshold jurisdictional test does not necessitate that the Court exercise this jurisdiction.  The Act has been characterized by the Supreme Court as "'an enabling Act, which confers discretion on the courts rather than an absolute right upon the litigant.'"  Wilton v. Seven Falls Co., 515 U.S. 277, 287 (1995).  "In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration."  Id. at 288.

The instant case presents an additional issue that must also be considered:  the pending Matthews litigation in state court.  Because this litigation is currently unresolved, there is no way to know whether either, both, or neither of the parties will

ultimately held liable for Mr. Matthews' injuries, and if they are, the specific negligent actions that will be found to be the cause of those injuries. As binding caselaw in this Circuit has noted, "it is not the function of a United States District Court to sit in judgment on these nice and intriguing questions which today may readily be imagined, but may never in fact come to pass." <u>American Fidelity & Casualty Co. v. Pennsylvania Threshermen & Farmers' Mutual Casualty Ins. Co.</u>, 280 F.2d 453, 461 (5th Cir. 1960). Thus, if factual questions as to the specific liabilities of the parties must be answered before deciding the issues presented in the instant case, this Court should not exercise jurisdiction and rule on those issues until the underlying factual questions are resolved.

Three primary issues are raised by the parties in their cross-motions for summary judgment. First, the parties disagree as to whether the indemnification clause in the subcontract requires Liberty Mutual to pay for the full cost of Triple R's defense. Second, the parties disagree as to whether the coverage in the Liberty Mutual policy for Triple R as an "additional insured" entitles Triple R to full coverage for any liability arising out of the Matthews action, including presumably full payment for its defense. Finally, Triple R seeks a declaratory judgment that it is entitled to full indemnity for any liability arising out of the Matthews action.

### A. **Obligation to defend based on indemnification clause**

The parties first disagree as to whether Liberty Mutual is responsible for the full cost of defending Triple R, including monies already spent. Liberty Mutual concedes it has a duty to defend Triple R because the allegations of the Matthews complaint could

give rise to liability for which Liberty Mutual would be responsible.[1] The real argument Plaintiff asserts with respect to the duty to defend is its contention that Liberty Mutual must pay the full cost of the defense pursuant to the indemnification clause in the subcontract. Plaintiff concedes that Florida law does not provide for a right of equitable contribution and subrogation between primary insurance carriers to recoup defense costs. Rather, Plaintiff argues that the indemnification clause in the contract between Triple R and General Asphalt dictates that Liberty Mutual must pay the entire cost of Triple R's defense, citing Florida case law in support of this position. See, e.g., Continental Casualty Co. v. City of South Daytona, 807 So.2d 91 (Fla. 5th DCA 2002); St. Paul Fire and Marine Ins. Co. v. Lexington Ins. Co., 2006 WL 1295408 (S.D. Fla. 2006).

A comparison between the instant case and a case to which Plaintiff cites reveals the fundamental difficulty in applying this caselaw without the underlying liabilities of the parties having been established. In City of South Daytona, the South Daytona Little League entered into a contract with the City of South Daytona for use of

---

[1] The duty to defend an insured against a lawsuit filed by a third-party is a distinct, and broader, duty than the duty to indemnify. It is settled law that an insurer's duty to defend is based solely on the allegations of the complaint. Trizec Prop., Inc. v. Biltmore Construction Co., 767 F.2d 810, 811 (11th Cir. 1985). Further, even if a number of parties are named in the complaint as potential causes of the injuries for which relief is sought, but "the facts alleged show any basis for imposing liability upon the insured that falls within policy coverage, the insurer has a duty to defend." Lime Tree Village Community Club Assn., Inc. v. State Farm Gen. Ins. Co., 980 F.2d 1402, 1406 (11th Cir. 1983). The allegations in Matthews' complaint are broad enough to include liability of Triple R for work done by General Asphalt during the project. Therefore–and the parties do not disagree on this point–Liberty Mutual has a duty to defend Triple R in the Matthews lawsuit. Similarly, Triple R's own insurer, American Home, also has a duty to defend Triple R in the lawsuit, because the complaint alleges that Triple R was itself negligent and caused Matthews' injuries.

its facilities, and a clause in the contract provided that the Little League would indemnify the City and assume responsibility for all claims arising out of its use of the facility. A claim arose when a baseball coach was hit by a baseball and injured during a game. The court concluded that the City could recover all of its attorney's fees and costs in defending the action, because the indemnification clause in the contract shifted all exposure from the City's own insurer to the Little League's insurer. Plaintiff Triple R reasons that, similarly, General Asphalt's contractual obligation to indemnify it shifts the full cost of providing a defense to General Asphalt's insurer, Liberty Mutual. However, Plaintiff misses one key distinction between the instant case and <u>City of South Daytona</u>–the Matthews claim at issue in this case did not obviously arise out of General Asphalt's operations, which are the only operations to which the indemnification clause in the contract applies. In contrast, in <u>City of Daytona</u>, the lawsuit arose out of an injury sustained by a baseball coach, during a baseball game, when a baseball hit him, and the connection to the Little League's use of the facilities could not have been clearer. Thus, the Court concludes that it is impossible to determine whether the indemnification clause in the subcontract has shifted the full responsibility for Triple R's defense to Liberty Mutual without first determining where the ultimate liabilities lie. That determination, however, is the precise issue currently pending in state court, and so for the reasons articulated below, the Court declines to issue a declaratory judgment on this issue at the present time.

    **B.**    **<u>Obligation to defend based on "additional insured" coverage</u>**

Plaintiff also argues that as an "additional insured" on the Liberty Mutual policy, it is entitled to coverage for both any negligence of General Asphalt for which Triple R is

7

held vicariously liable and any negligence of its own. Plaintiff relies on Florida caselaw establishing that the language appearing in the "additional insured" portion of the policy, is ambiguous and thus must be construed in favor of the insured. See, e.g., Container Corp. of America v. Maryland Casualty Co., 707 So.2d 733, 736 (Fla. 1998); Koala Miami Realty Co. v. Valiant Ins. Co., 913 So.2d 25, 27 (Fla. 3d DCA 2005). In Container Corp., the Florida Supreme Court held that an additional insured was entitled to coverage for its own negligence arising out of the insured's operations at its operations site, not just vicarious liability for the insured's negligence. 707 So.2d at 736. The relevant policy language in the instant case is nearly identical: the Liberty Mutual policy provides coverage to Triple R, "but only with respect to liability arising out of [General Asphalt's] operations or premises owned by or rented to [General Asphalt]." As in Container Corp., this language is ambiguous as to whether Triple R's own negligence is to be covered, or simply vicarious liability for General Asphalt's negligence, but the remainder of the sentence is clear: coverage is provided only for liability arising out of General Asphalt's operations or premises. Even if this ambiguity in the policy language necessitates that the insurer cover the additional insured for its own negligence, that coverage is still limited to negligence arising out of General AsphaltIt's operations by the rest of the language in the "additional insureds" portion of the policy.

This distinction is significant for purposes of determining whether declaratory judgment is appropriate at this time. The underlying facts and liabilities have not yet been established, so it is unclear whether Triple R's liability will arise out of its own independent work on the highway project, or will arise out of General Asphalt's

8

operations on the project. For example, as Defendant points out, one of the allegations in the Matthews complaint was that the failure to warn motorists of the uneven pavement was negligent and caused his injuries, and per the deposition of Patricia Fuccile, the responsibility to warn of a potentially dangerous condition was Triple R's alone. Any liability for failure to carry out this responsibility could very well be borne by Triple R and its own insurers, because this liability may not have arisen out of General Asphalt's operations. Without knowing where the ultimate liabilities lie, the Court cannot issue a declaratory judgment as to whether Liberty Mutual has a duty to defend Triple R pursuant to the "additional insured" portion of its policy.

C.   **Indemnification**

Finally, Plaintiff asserts that this Court should exercise its jurisdiction and issue a declaratory judgment on the duty to indemnify. It seems obvious at the outset that the precise liabilities for which Liberty Mutual is obligated to indemnify Triple R cannot be determined until the state court reaches a finding as to the liabilities in the underlying Matthews litigation. As articulated above, the general rule in this Circuit is that it is within a district court's discretion to "decline to express legal opinions on academic theoreticals which may never come to pass." American Fidelity, 280 F.2d at 461.

Plaintiff points, however, to Fifth Circuit precedent interpreting American Fidelity, and concludes that the Court may proceed with a declaratory relief action on the duty to indemnify even if the underlying liabilities have not yet been established. See Exxon Corp. v. St. Paul Fire and Marine Ins. Co., 129 F.3d 781 (5th Cir. 1997). In Exxon Corp., the court held that the determination of Exxon's liability in state court was not a prerequisite to a determination of coverage in a declaratory relief action in federal

district court. Id. at 785. The court noted that a district court may consider staying the case pending the disposition of the state court actions only if the state and federal cases are parallel: involving the same issues and the same parties. Id. Thus, because the issues of coverage, policy interpretation, and bad faith were only being litigated in federal court, and those issues had not been raised in the state actions, they were not parallel and a stay was not warranted. Id. The court also cited the Fifth Circuit's prior holding that "an indemnitee may recover indemnity if he is able to demonstrate that he has either (1) tendered the defense of the action to the indemnitor, (2) the claim for indemnity is founded upon judgment, or (3) the indemnitee's claim is based on a written contract of insurance or indemnification." Terra Resources v. Lake Charles Dredging & Towing, 695 F.2d 828, 832 (5th Cir. 1983). Here, Triple R argues that the first and third of these exceptions applies, and so this Court should issue a declaratory judgment as to the indemnification issues without waiting for the resolution of the underlying Matthews litigation.

At the outset, this Court notes that both Exxon Corp. and Terra Resources are not binding precedent in this Circuit. Further, in Exxon Corp., the court was faced with a case where several claims had been settled, and relied upon prior precedent that had held that settlement of a case did not preclude a finding of indemnification in an action for declaratory relief. Here, no claims have been settled. Exxon Corp. does present one parallel to the instant action, in that both that case and this one do not have parallel cases pending in state court. Although there is related litigation pending in state court in this case, that litigation addresses different legal issues and parties, and cannot be considered to be precisely parallel. However, to the extent that the Fifth Circuit has

10

concluded that a declaratory judgment action may only be stayed pending disposition of a state court action if the two actions are parallel, this conclusion appears inconsistent with precedent from the Supreme Court and the Eleventh Circuit, by which this Court is bound. In Wilton v. Seven Falls Co., the Supreme Court repeatedly emphasized the nonobligatory nature of the declaratory judgment remedy, and the discretion vested in the district courts to stay or dismiss cases based on "considerations of practicality and wise judicial administration." Wilton, 515 U.S. at 288. In the only Eleventh Circuit case to discuss the general rule from American Fidelity, the court noted that the caution expressed in American Fidelity "is predicated on the traditional discretion of federal courts exercising jurisdiction over declaratory judgment actions." Edwards v. Sharkey, 747 F.2d 684, 686 (11th Cir. 1984). In Edwards, the Eleventh Circuit held that jurisdiction did exist for a district court to consider a declaratory judgment action between an injured third party and an insurance company even in the absence of a judgment in favor of the injured party. Id. at 686-87. However, nowhere in that case did the court state, as Plaintiff Triple R would argue, that this Court has an obligation to exercise that jurisdiction. Thus, the Court concludes that insofar as Exxon Corp. would preclude this Court from staying the instant action pending the disposition of the state court claims simply because the claims are not precisely parallel, that case is inconsistent with the broad discretion given to this Court by the language of the statute and the Supreme Court's holding in Wilton.

Based upon this analysis of the caselaw, the Court concludes that it has the discretion to determine whether the indemnification rights of the Plaintiff should be determined at this time, or whether the instant action should be stayed pending the

11

resolution of the state court claims.[2] In light of the fact that significant questions of liability remain unresolved in the pending state court litigation, it is this Court's judgment that any declaration of indemnification obligations would be premature at this time.

## III. CONCLUSION

For the reasons articulated above, this Court finds that the issues presented for resolution in the instant cross-motions for summary judgment cannot be resolved without a determination of the factual issues and underlying liabilities in the pending Matthews litigation. Accordingly, it is hereby

**ORDERED AND ADJUDGED** as follows:

1. Defendant Liberty Mutual's Motion for Final Summary Judgment [DE 13] is **DENIED**.

2. Plaintiff's Cross Motion for Summary Judgment [DE 18, 20] is **DENIED**.

3. The above-referenced action is hereby **STAYED** pending the resolution of Matthews v. State of Florida Department of Transportation, et al., Case No. 02-000215 (12), in the Circuit Court of the 17th Judicial Circuit in and for Broward County.

4. Plaintiff Triple R shall file a Status Report with this Court on or before July 2, 2007, advising of the status of the Matthews litigation. If the Matthews

---

[2] Although a district court has the discretion to either stay or dismiss a case of this type, the Supreme Court has counseled that staying the case is the better approach in a situation such as this one. "We note that where the basis for declining to proceed is the pendency of a state proceeding, a stay will often be the preferable course, because it assures that the federal action can proceed without risk of a time bar if the state case, for any reason, fails to resolve the matter in controversy." Wilton v. Seven Falls Co., 515 U.S. 277, 288 n.2 (1995).

litigation is resolved prior to that date, Plaintiff shall file a Status Report with this Court advising of such resolution.

5. The Clerk of Court is directed to **CLOSE** this case for administrative purposes only.

DONE AND ORDERED in Chambers at Fort Lauderdale, Broward County, Florida, on this  7TH  day of May, 2007.

JAMES I. COHN
United States District Judge


Copies provided to:

Counsel of record